1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7
8
9
10
11

TIFFANY SMITH,

                    Plaintiff,

        v.

FIRST AMERICAN TITLE
INSURANCE COMPANY,

                    Defendant.

C11-2173 TSZ

ORDER

12      THIS MATTER comes before the Court on plaintiff's renewed motion for class

13  certification, docket no. 89.  Having reviewed all papers filed in support of, and in

14  opposition to, plaintiff's motion, the Court enters the following order.

15  **<u>Background</u>**

16      In February 2008, plaintiff Tiffany Smith sold a residence located in the city of

17  Selah, in Yakima County, Washington.  2d Am. Compl. at ¶ 9 (docket no. 32); HUD-1

18  Settlement Statement ("HUD-1") (docket no. 16-2).  Defendant First American Title

19  Insurance Company ("FATIC") acted as escrow agent for the transaction.  *See* Escrow

20  Instr. (docket no. 16-1).  In executing the Escrow Instructions, plaintiff as "Seller" agreed

21  "to pay all other disbursements and charge [sic] as itemized on the estimated closing

22  statement and/or HUD Settlement Statement (the "Closing Statement"), which Seller

23

ORDER - 1

1   signs contemporaneously herewith." _Id._ at 2.  The HUD-1 listed _inter alia_ (i) a closing

2   fee of $485 plus tax of $39.78, which was split evenly between plaintiff and the

3   purchaser ($262.39 each), (ii) a document fee of $73.94 plus tax of $6.06 for a total of

4   $80, and (iii) an additional settlement charge of $125 for FATIC's Northwest Post

5   Closing Center, a division that specializes in post-closing reconveyance services.  _See_

6   Mundell Decl. at ¶ 5 (docket no. 61); HUD-1 (docket no. 16-2 at 3).

7          In connection with the transaction, a limited practice officer ("LPO") employed by

8   FATIC prepared two documents, which plaintiff was required to deposit into escrow,

9   namely an excise tax affidavit and a statutory warranty deed.  _See_ Escrow Instr. (docket

10  no. 16-1 at 2 & 7).  Both forms are among those approved by Washington's Limited

11  Practice Board for use by LPOs.  _See_ APR 12(b)(2)(vii), (d) & (e); Ex. A to Costa 2d

12  Decl. (docket no. 93-1).  At the time of plaintiff's transaction in February 2008, in

13  addition to an escrow fee, FATIC charged a fee for each document drafted by an LPO.

14  Subsequently, pursuant to a state law that became effective on June 12, 2008, FATIC

15  filed with the Insurance Commissioner, with respect to 13 of the 14 Washington counties

16  in which it has offices, schedules of the fees it charged for escrow services, which varied

17  by county.  Rawlins Decl. at ¶¶ 4 & 6 and Ex. B (docket no. 62); _see_ RCW 48.29.193.

18  For Yakima County, FATIC indicated to the Insurance Commissioner that the fee for

19  document preparation ranged between $65 and $80 per document, which was consistent

20  with the amount earlier billed to plaintiff. Ex. B to Rawlins Decl. (docket no. 62-2 at 27).

21         In January 2010, FATIC began using a "one-rate" structure.  Rawlins Decl. at ¶ 7.

22  Under the new system, FATIC ceased the practice of separately billing for document

23

1    preparation and certain other services, and instead started charging a generally higher

2    closing fee to cover virtually all standard escrow services.  *Compare* Ex. B *with* Ex. C to

3    Rawlins Decl.  In the "one-rate" schedule contemporaneously filed with the Insurance

4    Commissioner, however, FATIC reserved the right to "amend all fees to compensate for

5    excessive work or liability incurred."  Ex. C to Rawlins Decl. (docket no. 62-3 at 5).

6          The property sold by plaintiff was encumbered by a deed of trust identifying the

7    lender as Homecomings Financial Network, Inc., the beneficiary as Mortgage Electronic

8    Registration Systems, Inc. ("MERS"), and the trustee as Valley Title Guarantee.  *See*

9    Mundell Decl. at ¶ 26 and Exs. C & D.  The obligation secured by such deed of trust was

10   satisfied from the proceeds of the sale, *see* HUD-1 (docket no. 16-2 at 4), and the trustee

11   was required by law to reconvey the property, *see* RCW 61.24.110(1).  For unknown

12   reasons, however, Valley Title Guarantee did not perform the necessary reconveyance.

13   Rather, MERS appointed FATIC as successor trustee, and FATIC itself completed the

14   reconveyance.[1]  Mundell Decl. at ¶ 26 & Ex. D; *see* Ex. 10 to Williamson Decl. (docket

15   no. 45-1 at 63).

16

17   _____

18   [1] Pursuant to the Deeds of Trust Act, if a beneficiary of a deed of trust fails to request reconveyance by
     the trustee within sixty days after the obligation secured thereby is satisfied, a title insurance company,
     escrow agent, or attorney who has paid the full amount owed from escrow may request the trustee to

19   reconvey the property.  RCW 61.24.110(2).  If the trustee is unable or unwilling to effect a reconveyance
     within 120 days after payment, a title insurance company, escrow agent, or attorney may record with the
     appropriate county auditor a notarized declaration of payment and send such declaration via certified mail

20   to the beneficiary and trustee.  RCW 61.24.110(3)(a).  If neither the beneficiary nor the trustee record an
     objection within sixty days thereafter, the lien of the deed of trust ceases to exist.  RCW 61.24.110(3)(b).

21   Although FATIC could have pursued these avenues to ensure that the purchaser of plaintiff's property
     acquired clear title, it chose instead, within two weeks of closing, to seek its appointment by MERS as
     successor trustee.  *Compare* HUD-1 (dated Feb. 20, 2008) *with* Ex. D to Mundell Decl. (executed Mar. 3,

22   2008).

23

ORDER - 3

In November 2011, over three years after the transaction at issue, plaintiff initiated this putative class action in King County Superior Court, and the matter was removed by FATIC pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1453.  Notice of Removal (docket no. 1).  After plaintiff amended the complaint, FATIC successfully moved for dismissal with prejudice of an unjust enrichment claim.  Minute Order (docket no. 27).  Following a second amendment of the complaint, FATIC's Rule 12(b)(6) motion was granted as to a claim for breach of the duty of good faith and fair dealing, and such claim was dismissed with prejudice.  Order (docket no. 39).  The claims remaining in this suit are (i) breach of contract, (ii) violation of Washington's Consumer Protection Act ("CPA"), and (iii) breach of fiduciary duty.[2]  *See* 2d Am. Compl. at ¶¶ 27-30, 34-37, & 38-41 (docket no. 32).  Plaintiff now moves, pursuant to Rule 23(b)(3), to certify two classes, as follows:

> **Class 1**: All persons who were charged a Document Fee for the preparation of a statutory warranty deed at any time during the period that began six years prior to the filing of the original complaint in this action, through trial.

> **Class 2**: All persons who were charged a fee for reconveyance processing and/or tracking services by Defendant at any time during the period that began six years prior to the filing of the original complaint in this action,

---

[2] With respect to the breach of fiduciary duty claim, FATIC unsuccessfully moved for partial summary judgment on the ground that the claim is time-barred.  *See* Minute Order (docket no. 80).  In support of her motion for class certification, plaintiff asserts that the Court previously ruled FATIC "provided no evidence" to support a finding that the limitation period had run.  Reply at 3 (docket no. 94).  Plaintiff misrepresents the record.  In actuality, the Court held that a genuine dispute of material fact, concerning when plaintiff knew or should have known the salient facts underlying the elements of the breach of fiduciary duty claim, precluded summary judgment.  Minute Order at 1:16-17 (docket no. 80); *see* Fed. R. Civ. P. 56(a); *see also 1000 Va. Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 146 P.3d 423 (2006) (discussing the "discovery rule of accrual" for a cause of action).

ORDER - 4

through trial, and whose old deeds of trust were reconveyed by their former lender within 90 days after completion of the escrow.

Pla. Mtn. at 1-2 (docket no. 89).

## Discussion

### A.   Standard for Class Certification

Rule 23 operates as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  To maintain a class action, plaintiff must "affirmatively demonstrate" compliance with Rule 23.  *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).  The prerequisites of Rule 23 are not mere pleading standards, but rather are evidentiary thresholds, *id.*, and before a class may be certified, plaintiff must prove (1) the class is so numerous that joinder of all members is impracticable; (2) questions of law or fact common to the class exist; (3) the representative's claims are typical of the claims of the class; and (4) the representative will "fairly and adequately" protect the interests of the class.  Fed. R. Civ. P. 23(a).

Plaintiff must also present evidence to establish that the case falls within one of three permissible categories of class action.  *Behrend*, 133 S. Ct. at 1432 (citing Fed. R. Civ. P. 23(b)).  Plaintiff seeks class certification under the third category, which requires plaintiff to prove that the case involves "questions of law or fact common to class members" that "predominate over any questions affecting only individual members" and as to which "a class action is superior to other available methods for fairly and efficiently

1   adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In assessing whether these

2   criteria are satisfied, the Court must consider (A) the class members' interests in

3   individually controlling the prosecution of separate actions, (B) the extent and nature of

4   any litigation concerning the controversy already begun by class members, (C) the

5   desirability or undesirability of concentrating the litigation of the claims in this forum,

6   and (D) the likely difficulties in managing a class action.  _Id._

7   **B.**      **Lack of Commonality**

8          Commonality, within the meaning of Rule 23(a), requires plaintiff to show that the

9   claims of all class members depend on "a common contention" of such nature as "is

10  capable of classwide resolution."  _Wal-Mart_, 131 S. Ct. at 2551.  The test is whether the

11  determination of the truth or falsity of such common contention "will resolve an issue

12  that is central to the validity of each one of the claims in one stroke."  _Id._  "What matters

13  . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of

14  a class-wide proceeding to generate common _answers_ apt to drive the resolution of the

15  litigation."  _Id._ (emphasis in original, quoting Richard A. Nagareda, _Class Certification in_

16  _the Age of Aggregate Proof_, 84 N.Y.U. L. REV. 97, 132 (2009)).  The Court must "probe

17  behind the pleadings" and engage in a "rigorous analysis" as to whether the prerequisites

18  for a class action have been satisfied.  _Behrend_, 133 S. Ct. at 1432.  The Court's inquiry

19  will necessarily "entail some overlap with the merits" of the underlying claims because

20  class certification considerations are generally "enmeshed" in the factual and legal issues

21  associated with the causes of action being pursued.  _Walmart_, 131 S. Ct. at 2551-52; _see_

22  _also Behrend_, 133 S. Ct. at 1432; _Ellis v. Costco Wholesale Corp._, 657 F.3d 970, 981 (9th

23

Cir. 2011) ("[I]t is not correct to say a district court _may_ consider the merits to the extent that they overlay with class certification issues; rather, a district court _must_ consider the merits if they overlap with the Rule 23(a) requirements." (emphasis in original)).

The crux of plaintiff's remaining claims is that FATIC could not, pursuant to the Escrow Instructions, charge a document fee or a reconveyance fee in addition to the closing fee.  Plaintiff relies on the following two provisions of the Escrow Instructions:

> SELLER(S) HEREIN DEPOSIT WITH YOU THE FOLLOWING:
>
> [ X ] Warranty Deed                    [ X ] Excise Tax Affidavit . . .
> executed by and between the following:  Tiffany D. Smith, also shown of record as Tiffany D. Smith-Rogers, as her separate estate, to Alan L. Melton, an unmarried man, which cover the premises fully described in the above referenced preliminary commitment for title insurance . . . , which document(s) you are instructed to record, file, release and/or deliver when you have all necessary funds . . . .
>
> If there are underlying encumbrances being paid off which require the obtaining of a Fulfillment Deed, Reconveyance, Release or Satisfaction, you are instructed to pay the demand of the appropriate party and obtain and record such a document.

Escrow Instr. (docket no. 16-1 at 2-3).

Plaintiff, however, fails to explain how the above-quoted language prohibited FATIC from billing separately for preparing documents or effecting a reconveyance. The Court has previously made a similar observation, _see_ Order at 4 (docket no. 39) ("Neither excerpt from the Escrow Instructions discusses what, if any, fees First American may charge."), and plaintiff persists in not addressing the issue.  Moreover, plaintiff ignores the term of the Escrow Instructions in which she expressly agreed to pay all charges "itemized on the . . . HUD Settlement Statement," which was executed on the

ORDER - 7

same day.  _See_ Escrow Instr. (docket no. 16-1 at 3); HUD-1 (docket no. 16-2).  The contemporaneous HUD-1 enumerated several charges, including the $80 document fee and $125 reconveyance fee at issue, and plaintiff's contention that the remaining claims in this case can be resolved in favor of the class solely by examining the language of the Escrow Instructions, even assuming that all potential class members had similar escrow instructions, lacks merit.

Rather, to assess whether FATIC had a basis for billing a document fee[3] and/or a reconveyance fee, the HUD-1 for the transaction must be examined, and the related file must be reviewed.  Washington regulations require that an escrow agent "[e]nsure that all fees are for bona fide services and bear a reasonable relationship in value to the services performed."  WAC 208-680-540(3).  Assessing whether FATIC violated this regulation, or any similar or related contractual or fiduciary duties, would require an individualized inquiry concerning (i) whether an LPO employed by FATIC prepared the number of documents for the particular transaction that would correlate with the fee charged, and (ii) what actions, if any, FATIC took with respect to reconveyance.  This evaluation must

---

[3] During the proposed class period, in six counties, namely King, Kitsap, Pierce, Snohomish, Spokane, and Thurston, FATIC did not charge a separate fee for preparing documents that transferred title, for example statutory warranty deeds, on which excise tax was paid or exempted.  Costa 2d Decl. at ¶ 5 (docket no. 93).  In defining classes with no geographic boundaries, and presumably advocating for either state-wide or nationwide classes, plaintiff fails to explain how her claims, which involve the fee structure in place in Yakima County, are typical of the claims of individuals to whom FATIC provided escrow services in other states or counties, including the six counties that had a vastly different policy concerning statutory warranty deeds and similar title-transferring documents.  Plaintiff has simply done nothing to support certification of a nationwide or state-wide class.  _See_ _Bushbeck v. Chicago Title Ins. Co._, 2012 WL 405173 (W.D. Wash. Feb. 8, 2012) (after denying a motion to certify a state-wide class, granting leave to file another motion to certify a class limited to King County); _see also_ _Bushbeck v. Chicago Title Ins. Co._, Case No. C08-755-JLR, Order dated Nov. 15, 2012 (docket no. 139) (denying second motion for class certification).

be conducted manually for each transaction.  *See* Barney Decl. at ¶¶ 8 & 14 (docket

no. 92) (indicating that a "manual file-by-file review" would be required to determine

"the actual type and number of documents prepared" and "the actual nature of the post-

closing tracking and reconveyance services provided").  Thus, although plaintiff has

pleaded a common question concerning whether FATIC properly charged document fees

and reconveyance fees during the class period,[4] plaintiff has failed to show how such

question could possibly be answered on a class-wide basis.  *See Boucher v. First Am.*

*Title Ins. Co.*, 2012 WL 3023316 at *8 (W.D. Wash. July 24, 2012) (denying a motion to

certify class, indicating that liability would depend on "a file-by-file review of all class

members' transactions," that such "individualized inquiry is incompatible with a class

action," and that recent cases "trend sharply against class certification in actions like this

one" (citing *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011);

*Benavides v. Chicago Title Ins. Co.*, 636 F.3d 699 (5th Cir. 2011); *Corwin v. Lawyers*

*Title Ins. Co.*, 276 F.R.D. 484 (E.D. Mich. 2011); *Scott v. First Am. Title Ins. Co.*, 276

F.R.D. 471 (E.D. Ky. 2011))).

---

[4] The proposed class period, namely November 23, 2005, to November 23, 2011, is unworkable for at least two reasons.  First, it fails to account for the different limitation periods associated with each remaining claim.  *Compare* RCW 4.16.040 (an action upon written contract must commence within six years) *with* RCW 19.86.120 (a claim under the CPA must be brought within four years after it accrues) *and Hudson v. Condon*, 101 Wn. App. 866, 874, 6 P.3d 615 (2000) (the applicable limitation period for a breach of fiduciary duty claim is three years (citing RCW 4.16.080)).  To the extent plaintiff contends, pursuant to the "discovery rule of accrual," that potential class members may pursue breach of fiduciary duty and CPA claims related to transactions that closed more than three or four years, respectively, before this case was initiated, plaintiff presents the types of "questions affecting only individual members," Fed. R. Civ. P. 23(b)(3), that render a class action improper.  Second, the proposed class period fails to recognize FATIC's January 2010 shift from per-service billing to the "one-rate" system.  Although these deficiencies might be cured by amending the class definitions, given the Court's rationale for denying plaintiff's motion for class certification, the Court declines to allow plaintiff leave to attempt to craft a more appropriate class period.

ORDER - 9

C.    **Atypical Claim**

Moreover, with regard to the challenged reconveyance fee, plaintiff does not have a typical claim as required by Rule 23(a).  As recognized in _Tavenner v. Talon Group_, 2012 WL 6022836 (W.D. Wash. Dec. 4, 2012), because reconveyance tasks occur after closing and after funds are disbursed, the flat fee for such service has to be negotiated without regard to the actual services to be performed.  _Id._ at *7.  In _Tavenner_, in which the evidence established that the defendant's role in reconveyance was "perfunctory," the reconveyance fee was nevertheless held not to constitute a breach of contract, a breach of fiduciary duty, or an unfair or deceptive act under the CPA.  _Id._  A similar result was reached in a more recent case.  _See_ _Kazman v. Land Title Co._, 2014 WL 128061 at *4 (Jan. 13, 2014) (agreeing that, "in the absence of a provision that prohibits a reconveyance fee, [the escrow agent] properly charged for reconveyance tracking services as an 'additional service' in accordance with the escrow instructions").

To the extent plaintiff contends, despite the holdings in _Tavenner_ and _Kazman_, that the reconveyance fees FATIC collected during the proposed class period should be refunded in cases in which FATIC merely monitored the reconveyance process, plaintiff has failed to establish that she is an appropriate class representative.  With respect to the real property that plaintiff sold, FATIC did much more than track the post-closing activities of the beneficiary and trustee of the deed of trust granted by plaintiff.  FATIC arranged to be appointed as successor trustee, and then itself completed the necessary reconveyance in connection with plaintiff's transaction.  Plaintiff simply does not have the type of claim that she pleaded on behalf of the putative class.

ORDER - 10

1  **Conclusion**

2          For the foregoing reasons, the Court concludes that plaintiff has failed to establish

3  the requisite commonality to maintain a class action.  The Court is also persuaded that

4  individual questions predominate, that plaintiff's reconveyance fee claim is not typical of

5  the alleged class claims, and that a class action is not a superior vehicle in light of the

6  innumerable permutations of relevant facts at issue and the complexities of managing a

7  class action.  Thus, plaintiff's motion for class certification, docket no. 89, is DENIED.[5]

8  The parties are DIRECTED to file a Joint Status Report within twenty-one (21) days of

9  the date of this Order, indicating whether they have completed discovery and dispositive

10 motion practice, and if not, what discovery or motions remain outstanding, and when they

11 anticipate being prepared for trial in this matter.  The Clerk is DIRECTED to send a copy

12 of this Order to all counsel of record.

13          IT IS SO ORDERED.

14          Dated this 3rd day of June, 2014.

15

16                                          _Thomas S Zilly_

17                                          Thomas S. Zilly
                                            United States District Judge

18

19

20  ────────────────

21  [5] In light of the Court's ruling, the Court declines to address FATIC's motions, _see_ Resp. at 9-11 (docket
    no. 91), to strike (i) plaintiff's counsel's summaries of spreadsheets and other materials provided by

22  FATIC in discovery, and (ii) the declaration of plaintiff's expert Barbara Fox, docket no. 49.  The Court
    also declines to decide whether the filed-rate doctrine or the voluntary payment doctrine might apply.

23

ORDER - 11